IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

EDGAR CORDERO,              )
                           )
Plaintiff,                 )        Civil Action No.:
                           )
v.                         )
                           )        JURY TRIAL DEMANDED
TBC CORPORATION,           )
STEVE HINKLE,              )
JESSICA SIGMUND            )
JARRIN PEPPER,             )
DEI' GARDNER JONES         )
Defendants.                )
_____

## COMPLAINT

**COMES NOW**, the Plaintiff, Edgar Cordero, by and through his counsel and files this action against Defendants for equitable relief and damages resulting from violations of The Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et. seq.* ("FMLA") against all Defendants, and TBC Corporation for violations of The Civil Rights Act of 1964 and the Civil Rights Act of 1991, Title VII, as amended, 42 U.S.C. § 2000(e), and all of the Defendants for violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. beginning § 12101 alleging as follows:

_____
**Disclosure Statement**
**S.D. Ga. LR 7.1.1**

The undersigned, counsel of record for Plaintiff, certifies that the following is a full and complete list of parties in this action:

| NAME | IDENTIFICATION AND RELATIONSHIP |
|------|----------------------------------|
| Edgar Cordero | Plaintiff in this action |
| TBS Corporation | Defendant in this action |
| Steve Hinkle | Defendant in this action |
| Jarrin Pepper | Defendant in this action |
| Dei' Gardner Jones | Defendant in this action |
| Beverly A. Lucas | Counsel for the Plaintiff |
| Homero Leon, Jr. | Counsel for the Plaintiff |

The undersigned further certify that the following is a complete list of officers, directors, or trustees of the above-identified parties:

Beverly Lucas

Homero Leon, Jr.

The undersigned further certifies that the following is a full and complete list of other persons, firms, partnerships, corporations, and organizations that have a financial interest in, or another interest which could be substantially affected by, the outcome of this case (including a relationship as a parent or holding company or similar relationship):

Lucas & Leon, LLC

## **<u>BRIEF SUMMARY</u>**

This case arises as a result of the Defendants' employment discrimination because of the Plaintiff's race, the fact that he is Latino, his disability, and the Defendants' interference with and retaliation because of the Plaintiff's FMLA status. The Plaintiff is qualified and experienced as a manager having held, over 23 years, many positions similar to that with the Defendants. The Defendants indicated that the Plaintiff was performing well as evidenced by the Plaintiff's promotion and pay raises. The Plaintiff was never fired from any of his previous employers. The Defendants' hired the Plaintiff as a manager in training.

The Plaintiff was never promoted, as promised, to the store for which he trained. When the Plaintiff continued to suffer a grand mal seizures, while at work, the Defendants first interfered with the Plaintiff's FMLA rights by placing the Plaintiff on FMLA leave, without the Plaintiff requesting such. When the Plaintiff tried to discuss with management and with the benefits manager, the fact that he did not need to use his FMLA benefits beyond the day of his seizure, the Defendants, pretextually, accused the Plaintiff of "stealing commission" and eventually terminated his employment, by telephone for being "belligerent, refusing to cooperate, loud, and insubordinate." When the Defendants issued the

Department of Labor Separation Notice, it listed, as the reason for termination as, "Unprofessional Conduct." The Defendants actually terminated the Plaintiff because of his FMLA status, his disability, his national origin, and his race. Other co-workers of the Plaintiff, who are Caucasian, without a disability and who were born in the contiguous United States were treated differently.

## PARTIES, JURISDICTION, AND VENUE

### 1.

The Plaintiff, ("Plaintiff"), Edgar Cordero, is a 49 year old, Latino male who was hired, by the Defendant, TBC Corporation, ("TBC") to train as a manager with the company. He is a resident of Richmond County and submits himself to the jurisdiction and venue of this Court.

### 2.

Defendant TBC is a publicly-traded, foreign corporation whose registered agent is Corporation Service Company, located at 40 Technology Parkway South, Suite 300, Norcross Georgia 30092 and can be served at this address.

### 3.

The Defendant's store in which the Plaintiff worked is located in Augusta, Georgia which is within the jurisdiction and venue of this Court.

### 4.

The Defendants possess significant contacts with the state of Georgia and with this federal district in that the Defendant, TBC, operates a retail store located within this jurisdiction and venue.

5.

At the time of the violations, the Plaintiff mostly worked in the Augusta, Georgia store.

6.

It is the store, in Augusta, that most of the events, that are the subject of this litigation, took place.

7.

Therefore, this jurisdiction and venue are proper as to this Defendant and service may be perfected pursuant to 28 U.S.C. § 1391(b)(2).

8.

This action arises from Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, as amended, the Americans with Disabilities Act, 42 U.S.C. § 12101 and The Family Medical Leave Act of 1993, 29 U.S.C. § 2601, therefore, subject matter jurisdiction lies with this Court under 28 U.S.C. § 1331, Federal Question.

9.

The Defendants are "employers" as defined by Sec. 12111[Section 101] (5)(A). *"The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent for such person…"*

10.

Upon information and belief, the Defendants and their subsidiaries employ more than 10,500 employees located in the United States, Canada, and Mexico under the names *Tire Kingdom, Merchant's Tire and Auto Center, NTB Tire and Auto Centers, Big O Tire, Midas, SpeeDee Oil Changes and Auto Service,* and others.

11.

The Plaintiff is a *"qualified individual"* as defined by Sec. 12111[Section 101](8) in that the Defendant has never complained that the Plaintiff could not perform the essential duties of the position of manager and in fact, the Plaintiff has held several managerial retail positions in the past, and was performing well in a managerial position for the Defendants.

## ADMINISTRATIVE REMEDIES

12.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

13.

Complaints brought under Title VII and the Americans with Disabilities Act of 1990, as amended, must exhaust administrative remedies by first filing a charge with the Equal Employment Opportunity Commission ("EEOC"), within one hundred and eighty days from the adverse employment action. The EEOC is tasked with the responsibility to attempt conciliation and investigation of charges. Upon information and belief, the Defendants refused such measures. The EEOC is required to perform these tasks within one hundred and eighty days and if they do not, in fairness to the parties and in an effort to preserve evidence, must issue a Notice of Right to Sue, if requested by the Plaintiff.

14.

In this case, the EEOC issued the Notice of Right to Sue after its deadline for completion of its investigation passed and at the request of the Plaintiff's counsel. Plaintiff's counsel requested the Notice of Right to Sue in an effort to preserve the memory of and access to witnesses necessary to this case.

## **FACTUAL BACKGROUND**

15.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

16.

Plaintiff was hired by Defendant, TBC, on or about August 28, 2014.

17.

Plaintiff worked for the Defendants until his termination on or about February 10, 2016.

18.

Plaintiff was working well in a managerial capacity, Service Manager, for the Defendants and training for another of the Defendant's stores, as a Store Manager.

19.

During his tenure, with the Defendants, the Plaintiff earned a promotion, and received a raise, on or about November 2014, plus, the Plaintiff received two more pay increases, on or about June 2015 and October 2015.

20.

The Defendants have a neutral policy, custom, or practice of working managers 60-80 hours per week however, this policy, custom, or practice disparately impacts disabled employees.

21.

The Plaintiff repeatedly asked for coverage, as an accommodation, in order to take time off because the stress of working 60-80 hours per week increases the frequency of the Plaintiff's seizures.

22.

The Defendants frequently ignored the Plaintiff's requests for time off unless the Plaintiff hounded his superiors for coverage in order to attend important family functions such as a wedding or funeral.

23.

After proving himself as a valued employee, deserving a promotion and three raises, the store manager position was filled by Clarence Gaylor, a non-Hispanic, non-disabled man, on or about December, 2015.

24.

It was after Clarence Gaylor got the new store that the Defendants suddenly began "building a file" against the Plaintiff, in an effort to constructively discharge him or discharge him.

25.

On December 22, 2016, the Defendants wrote an Associate Warning Notice against the Plaintiff for "Failing to maintain TBC Standards of Conduct (poor Customer Service)."

26.

On January 19, 2016, the Defendants wrote an Associate Warning Notice against the Plaintiff for being "disrespectful and rude during a phone call" with the TBC benefits manager.  The terms "disrespectful" and "rude" are not defined.

27.

Use of the terms disrespectful and rude came as quite a surprise to the Plaintiff as his superior, Steve Hinkle, spoke to the Plaintiff in a threatening manner when saying things like, "Do you need me to come over there and explain it to you?"

28.

The Plaintiff's superior, Steve Hinkle, also frequently used the "F" word why speaking to the Plaintiff.

29.

When the Plaintiff was initially given the "Final" warning, the "final" was not marked.

30.

After being given the document, the Plaintiff tried to obtain an explanation of what was meant by the "Rude' and "Disrespectful" comment because the telephone conversation, with the benefits manager, was an attempt to understand the reason why he was being placed on FMLA without requesting it of which the benefits manager had no explanation.

31.

The Plaintiff refused to sign the written warning, therefore, Defendant Hinkle took the document back and placed an "X" by the "Final" warning.

## INTERFERENCE WITH FMLA BY ALL DEFENDANTS

32.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

33.

Defendant TBC is a covered "employer" as defined by Sec. 101(4)(A) because they are a "*any person engaged in commerce or I any industry or activity affecting commerce who employs 50 or more employees for each working day*

*during each of 20 or more calendar workweeks in the current of preceding*

*calendar year.*

34.

The other named Defendants, in this action, are included, by the FMLA, in the definition of "*employer*" in Sec. 101(A), *"includes (I) any person who acts, directly or indirectly, in the best interest of the employer to any of the employees of such employer…"*

35.

The Plaintiff, in this action, is an *"eligible employee"* as defined by the FMLA Sec. 101(2) which *"means an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested under section 102; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."*

36.

The employee possesses a *"serious health condition"* as required by FMLA as the Plaintiff suffers from epilepsy.

37.

The right to FMLA leave belongs to the employee and it is the employee, alone, who determines when he should use his leave.

38.

After suffering a grand mal seizure, on or around January 5, 2016, the Plaintiff was forced to use part of his FMLA leave when he did not request, did not need, and his doctor did not certify the need for such leave.

39.

Such forced leave is an interference with the Plaintiff's FMLA rights because it is the employee alone who decides when to use his FMLA leave.

40.

Other employees, who are non-Hispanic, without a disability were treated differently by allowing the employees to choose whether or not to use FMLA leave.

## RETALIATION IN FMLA BY ALL DEFENDANTS

41.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

42.

The Plaintiff objected to and sought an explanation for this mandated use of his FMLA leave.

43.

The Defendants retaliated against the Plaintiff for such objection and for his disability and began "building a file" against the Plaintiff in an attempt to constructively discharge or discharge the Plaintiff.

44.

Other non-Hispanic employees, who are not perceived by the Defendants to be disabled, were able to use their FMLA leave as the employee chose and without repercussions.

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED, THE CIVIL RIGHTS ACT OF 1991, AS AMENDED BY DEFENDANT TBC CORPORATION

45.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

46.

Upon information and belief, the Plaintiff was denied a promotion, by the Defendant, in part because the Plaintiff is Latino.

47.

Upon information and belief, Plaintiff was fired, in part, because he is Latino and in part in retaliation for the Plaintiff's resistance of the maltreatment perpetrated by his employer.

48.

Upon information and belief, Defendant failed to accommodate Plaintiff's disability because he is Latino.

49.

The Plaintiff was the only Hispanic Defendant employed, in the Augusta region.

50.

The Plaintiff recruited one Latino employee but the Defendant failed to recruit/retain Latino employees.

51.

The Plaintiff trained the one Latino employee but despite the employee's successful performance, the Defendant failed to promote the employee.

52.

According to information and belief, there are hundreds of eligible, qualified Latinos, in the Augusta region, in part because of the local military base.

## VIOLATION OF THE AMERICANS WITH DISABILITIES AMENDMENTS ACT BY ALL DEFENDANTS

53.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

54.

The Defendants are *"employers"* as defined by The Americans with Disabilities Amendments Act of 2008 ("ADAAA") Sec. 12111 in that they are *"...a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person..."*

55.

As such the Defendants are a *"covered entity,"* as defined by the ADAAA, because the term *"covered entity"* *"means an employer, employment agency, labor organization, or joint labor management committee."*

56.

The Plaintiff is an *"employee"* as defined by the ADAAA Sec. 12111(4). *"The term 'employee' means an individual employed by the employer."*

57.

The ADAAA Sec. 12112(a) states that

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employment compensation, job training, and other terms, conditions, and privileges of employment.

58.

The ADAAA Sec. 12111(8) defines a *"qualified individual"* as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

59.

A disability is defined by the ADAAA Sec. 12102 [Section 3](1) as

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a records of such impairment; or
(C) being regarded as have such impairment.

60.

The Plaintiff is a "*qualified individual"* as the Plaintiff had, at the time of his termination, performed his job without complaint from the Defendants, for more than a year.

61.

In addition, the Plaintiff has held many such jobs, in his past, over 27 years.

62.

The Plaintiff has a disability or is at least perceived to have a disability, by the Defendants, because he has a condition that effects the normal operation of his brain, epilepsy.

63.

The Plaintiff, started having an increase in the number of epileptic seizures at work and he requested, repeatedly, time off and additional help, because the stress of working 50-80 hours a week, causes an increase in the number of seizures for the Plaintiff.

64.

The Plaintiff's request for an accommodation went ignored.

65.

The Plaintiff was hired, originally, to train as a Store Manager, a position that comes with a significant increase in pay.

66.

When the Plaintiff's seizures began to increase, the Store Manager's job was given to a non-Hispanic, seizure-free man, instead of the Plaintiff and the Defendants began *"building a file"* on the Plaintiff.

67.

The Defendants' explanation for this was simply, "bad timing."

68.

Rather than assisting the Plaintiff in his goal of a promotion to Store Manager, the Defendants continued to make the Plaintiff's less desirable by

accusing him of stealing, accusing him of screaming at another employee, by ceasing training as a store Manager while expecting the Plaintiff to act as Store Manager without the increase in pay and by using foul language, (Steve Hinkle).

69.

According to information and belief, Defendant TBC Corporation, knew of and supported this maltreatment.

## TRIAL BY JURY

70.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

71.

Pursuant to the United States Constitution, Seventh Amendment, and the Federal Rule of Civil Procedure, Rule 38, the Plaintiff demands a trial by jury of his peers, on all claims on which a jury trial is available.

## ATTORNEY'S FEES

72.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

73.

Sec. 12205 of the Americans with Disabilities Act states,

*In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.*

74.

Sec. 107(a)(3) of the Family Medical Leave Act of 1993 states that *" The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert fees, and any other costs of the action to be paid by the defendant."*

## CONCLUSION

75.

Plaintiff incorporates herein the preceding paragraphs as if stated herein for this claim for relief.

76.

The Defendants violated the ADAAA when they discriminated against the Plaintiff by the Defendants terminating the Plaintiff's training for the promotion to Store Manager due to the Plaintiff's disability and not engaging in a dialogue in order to reach an accommodation for the Plaintiff.

77.

The Defendants violated the FMLA when the Defendants forced the Plaintiff to use part of the Plaintiff's FMLA leave without a request and over the objection of the Plaintiff.

78.

The Defendants failed to accommodate the Plaintiff's disability, placing him on FMLA, without a request from the Plaintiff, eventually terminating the Plaintiff, and failed to recruit and retain Latinos because of animus held by the Defendants against Latinos.

79.

The Defendants performed all of the above-mentioned violations of law by and through its employees, Steve Hinkle, Jessica Sigmund, Jarrin Pepper, and Dei' Gardner Jones.

**WHEREFORE** Plaintiff prays that he have trial on all issues and judgment against the Defendants as follows:

1. Instruct the Clerk of Court to issue Summons herein attached;

2. That all issues be tried before a jury of his peers;

3. That the Court declare that each Defendant violated the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, as amended;

4.  That the Court declare that each Defendant violated the Family Medical Leave Act;

5.  That the Defendants be enjoined from future violations of civil rights and the Family Medical Leave Act, and the Americans with Disabilities Act;

6.  That the Plaintiff recover compensatory damages;

7.  That the Plaintiff recover for mental and emotional distress as determined by the enlightened conscience of the jury;

8.  That the Plaintiff recover liquidated damages where appropriate;

9.  That the Plaintiff recover interest where appropriate, calculated according to the prevailing rate;

10. The Plaintiff recover attorney's fees, expert witness fees, and costs from the Defendants;

11. The Plaintiff recover punitive damages where appropriate;

12. The Plaintiff be reinstated to the position of manager in training;

13. The Plaintiff be promoted to the store for which he was training or a store of equal value to the Plaintiff; and

14. The Plaintiff recover such other relief as the jury finds just and proper.

This _____ day of December, 2016.

Respectfully submitted,

**/s/Beverly A. Lucas**
Beverly A. Lucas, Esq.
Georgia Bar No.:  427692


**/s/Homero Leon, Jr.**
Homero Leon, Jr., Esq.
Georgia Bar No.:  446585


LUCAS & LEON, LLC
P.O. Box 752
Clarkesville, Georgia 30523
706-754-2001
706-754-8085
balucas@johnmarshall.edu

## **CERTIFICATION**

I do hereby certify that this document has been prepared in Times Roman

font, 14 point, in compliance with LR 5.1(C) of this Court.

> ***/s/Beverly A. Lucas***
> Beverly A. Lucas, Esq.
> Georgia Bar No.:  427692
>
> LUCAS & LEON, LLC
> P.O. Box 752
> Clarkesville, Georgia 30523
> 706-754-2001
> 706-754-8085
> balucas@johnmarshall.edu

## **<u>VERIFICATION</u>**

I, Plaintiff, Edgar Cordero, being duly sworn, under penalty of perjury, deposes and says that I have read the foregoing pleading to be filed and the facts stated herein are from first-hand knowledge and are true and correct, to the best of my knowledge and belief.

This _____ day of December, 2016

_____
Edgar Cordero, Plaintiff

Notary Seal_____

_____
Print Name

My commission expires____ of _____, 20____.